COMMISSIONER OF INTERNAL REVENUE
v. BABSON (three cases).
Nos. 5094, 5095, 5096.

Circuit Court of Appeals, Seventh Circuit.
April 9, 1934.

Rehearing Denied May 18, 1934.

Sewall Key and Morton K. Rothschild, both of Washington, D. C., Sp. Assts. to Atty. Gen., for petitioner.

George K. Bowden, Vincent J. Heffernan and Theodore T. Shields, all of Chicago, Ill., for respondents.

These proceedings were consolidated for hearing before the Board of Tax Appeals, and it was stipulated that the three appeals might be consolidated here for decision, and that the statement of evidence and the Board's findings and opinion should be included only in the record certified in cause No. 5096.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

The three appeals involving the Commissioner's determination of income taxes against the three respondents for the years 1925 and/or 1926 present but one issue: Do certain payments made by Babson Brothers, a corporation, to the respondents in 1925 and 1926, for the reduction of capital stock of the corporation, constitute ordinary dividend payments and hence subject to sur-tax rates, or do those payments constitute distribution in partial liquidation of the corporation, subject to taxation only to the extent of the profit reflected therein?

Babson Brothers, an Illinois corporation, was organized in 1906. On March 1, 1913, it had a paid in capital of $50,000 represented by 500 shares of capital stock of the par value of $100 and of the market value of $1,400 per share. The shares were owned by these respondents in equal proportions. Its business prior to 1914 was limited almost entirely to the mail order sale of phonographs. In that year the capital stock was increased by 2,000 shares and respondents paid to the corporation in equal proportions the total amount of $200,000 as additional capital, surrendered their old certificates, and received new certificates in equal proportions for 2,500 shares.

From 1919 to 1924, the corporation was engaged in a program of business expansion. It added many new lines of merchandise and sought to enter the general mail order field, largely for the reason that the phonograph was being rapidly displaced by the radio. Accordingly in January, 1919, the capital stock was increased by 2,500 shares which were issued in equal proportions to respondents for which they paid in cash $250,000. Likewise in August, 1919, 5,000 additional shares were issued to them in equal proportions for which they paid in cash $500,000. As a result, in December, 1920, the corporation had a paid in capital stock of $1,000,000, and accumulated surplus and undivided profits of $1,107,130. Thereupon on December 16, 1920, it increased its capital stock to $2,000,000, and declared a stock dividend of 100 per cent. On December 19, 1923, it had a surplus of $535,007, and declared a 25 per cent. stock dividend.

The attempted business expansion proved unprofitable and was abandoned, and a partial liquidation of the enterprise and its subsidiaries began, and eventually only three active lines were continued, viz., cream separators, harness, and furnaces. As a result of the partial liquidation, cash accumulated, and on September 18, 1924, the corporation declared a cash dividend in the aggregate amount of $150,000, and on May 29, 1925, it purchased from respondents at par and in equal proportions for cash, 5,000 shares of its capital stock, and canceled them. The par and book values were practically equal at this time. Of the shares redeemed, one-third in number had been acquired by Henry Babson in 1914, one-third by Gustavus in January, 1919, and one-third by Fred K. in August, 1919, cash being paid for all of them. A cash dividend of $200,000 was declared on December 31, 1925, and another of like amount on January 12, 1926, leaving a surplus of $11,823.57. On February 27, 1926, an additional 5,000 shares of stock were redeemed by cash and canceled. Of these one-third had been issued to Henry for cash in August, 1919, and the remaining two-thirds in 1923 in equal pro-

portions to Gustavus and Fred K. by way of stock dividends.

 The Board of Tax Appeals decided that the payments in redemption of stock should be treated as capital transactions, and that only the gain was taxable under section 201 (c) and (h) of the Revenue Act of 1926, 26 USCA § 932 (c, h)[1]. In other words, the Board held that the payments constituted bona fide partial liquidations, and not ordinary dividends.

Section 201 (f) of the Revenue Act of 1924, 26 USCA § 932 note, provided that the redemption of stock dividends should be treated as taxable dividends if made at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend. That section was enacted after the decision in Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, which held that Congress had no power to tax a stock dividend. However, it is not applicable to the redemptions here made in 1925, because the stock then redeemed had not been issued as stock dividends, but had been paid for in cash. That section, however, was repealed by the Revenue Act of 1926 which took effect as of January 1, 1925. See sections 286 and 1200 (a), 26 USCA § 931 note, and section 1a note. Whether the Board's decision was based upon section 201 (f) of the Act of 1924 is immaterial because it was substantially re-enacted by section 201 (g) of the Act of 1926, 26 USCA § 932 (g), which added a provision that it should apply to all redemptions of stock whether it had been originally issued as dividends or otherwise. It also provided that it should apply to the redemption or cancellation of stock, not issued as stock dividends, only if the cancellation were made after January 1, 1926. It is obvious that this section does not cover the redemptions and cancellations made in 1925, provided they were not accomplished at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, and the same may be said as to the redemptions made in 1926. Thus the issue is resolved into one of fact. That fact was decided by the Board adversely to petitioner's contention. It was based on evidence which was not only substantial but convincing, and we are not authorized to strike it down.

 It is contended by petitioner, however, that the issue just stated is one of law and not of fact. This contention is based on the assumption that Congress intended to tax as a dividend every distribution by a corporation of earnings accumulated after February 28, 1913, unless the distribution were in the form of a stock dividend, or unless the amounts were distributed in complete liquidation of a corporation. In other words, he insists that unless the distribution is a part of a complete liquidation, it must be held to be an ordinary taxable dividend. We do not conceive this to be the meaning of the statute, and we think our conclusion in this respect is supported by Treasury Regulation 69, Article 1549[2], which in substance states that the ques-

---

[1] Section 201(c): "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202 [section 933], but shall be recognized only to the extent provided in section 203 [section 934]. In the case of amounts distributed in partial liquidation * * * the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subdivision (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation."

Section 201(h): "As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock. * * *"

[2] Treasury Regulation 69, Article 1549. "Distribution in redemption or cancellation of stock taxable as a dividend.— * * * The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A bona fide distribution, however, in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend. Where a distribution is made pursuant to a corporate resolution reciting that the distribution is made in liquidation of the corporation, and the corporation is completely

tion is one of fact dependent upon the circumstances in each case. It further states that a bona fide distribution in complete liquidation shall not be considered as a taxable dividend, but that in all other cases the facts and circumstances shall be reported to the Commissioner for his determination. This is what happened here, and, of course, the Commissioner's determination was reviewable by the Board. This has been the practice without exception, and the Board's ruling here is quite consistent with its former decisions. It is true that Board has decided differently on different statements of fact, but in no case cited where the facts were similar to those here, has the Board or any court held differently from the decision of the Board in this case. A perusal of the cases cited by petitioner is quite convincing that his position in this respect is not tenable.

The order is affirmed.

liquidated and dissolved within one year after the distribution, the distribution will not be considered essentially equivalent to the distribution of a taxable dividend; in all other cases the facts and circumstances should be reported to the Commissioner for his determination whether or not the distribution, or any part thereof, is essentially equivalent to the distribution of a taxable dividend."