## COMMISSIONER OF INTERNAL REVENUE v. QUACKENBOS.

### No. 352.

Circuit Court of Appeals, Second Circuit.

June 10, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue.

Greenough, Lyman & Cross, of Providence, R. I. (Harry Parsons Cross, of Providence, R. I., of counsel), for respondent George Payn Quackenbos.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is one of eleven cases involving deficiencies in income taxes for the year 1930. The basic facts being identical, the eleven cases were consolidated in the Board of Tax Appeals. In the other ten cases appeals were taken to the Courts of Appeal of the First and Third Circuits.

The present taxpayer was a stockholder in the Woonsocket Mills, a Rhode Island corporation engaged in the manufacture of worsted yarns. The stock has always been closely held, for the most part by the Cordingley and Farnell families. In 1930, the taxpayer held 639 shares of the stock, having a cost basis of $58.04 per share. In the year 1922 the surplus of the corporation had reached a volume far in excess of its capital stock. At the beginning of that year the capital stock only amounted to $150,000, while the surplus equalled $1,277,644.53. During 1922, the investment

of the corporation in inventories greatly increased, there was a substantial addition to plant facilities, and a distribution of $352,500 in cash dividends. In view of the rapidly expanding activities, the officers were of the opinion that the company was top-heavy and that its fixed capital ought more nearly to correspond with the size of the business. Accordingly, on December 6, 1922, the charter was amended so as to increase the capital stock from $150,000 to $1,200,000 and new capital stock of the par value of $1,050,000 was issued in the form of a stock dividend of 700 per cent. Between the years 1922 and 1930 the corporate earnings declined materially and on June 30, 1930, there was a small debit balance so that the directors instead of having an expanding business were confronted with a poor business and a slightly impaired capital. On this account it was determined to reduce the capital stock from $1,200,000 to $800,000. Such a reduction was authorized at a special meeting of stockholders on July 16, 1930, and effected by the purchase by the corporation from its stockholders of 4,000 shares of stock at $90 per share—the fair value of the stock at that time. Inasmuch as the distribution of the proceeds of 213 shares (or one-third of the taxpayer's holdings of 639 shares) might have been paid out of earnings by the company since February 28, 1913, which were impounded as capital in 1922, the Commissioner treated it as an ordinary dividend and assessed a deficiency in income taxes based upon the cash distribution of $19,170 to the taxpayer in 1930. But on appeal to the Board of Tax Appeals the latter held that it was a partial distribution of capital, not essentially equivalent to a taxable dividend, and fixed the tax only upon the gain which the taxpayer realized in receiving $90 per share as against the base of $58.08 per share.

This appeal presents the questions whether (1) the distribution to the taxpayer was made in partial liquidation of the corporation and to be governed by section 115 (c) of the Revenue Act of 1928, 26 USCA § 2115 (c), or (2) was made at such time and in such manner as to be essentially equivalent to the distribution of a taxable dividend so as to be taxable as such under section 115 (g) of that Act, 26 USCA § 2115 (g).

■ While we can add nothing to what seems to us the unanswerable argument of Judge Morton in dealing with the dis-

tribution by Woonsocket Worsted Mills to another of its stockholders under identical circumstances (Commissioner v. Cordingley, 78 F.(2d) 118, decided by Circuit Court of Appeals of the First Circuit on May 25, 1935), we have thought it best to reinforce the decision of the First Circuit by the statement of our own views and the authority of another court.

The force of the Commissioner's contention that the distribution was not a partial liquidating dividend such as is governed by section 115 (c) because the corporation was not at the time planning a cessation of business or in the process of final liquidation is hard to perceive. When subsection (c) refers to amounts distributed "in partial liquidation," it nowhere limits such distributions to payments made in the course of winding up the corporation. Moreover, Article 625 of Regulations 74 provides that: "The phrase 'amounts distributed in partial liquidation' means a distribution in complete cancellation or redemption of a part of its stocks, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." A redemption of a part of the stock of a corporation, whether it be of all of a class such as of preferred stock, or of a part of the common stock, has no necessary relation to the winding up of the corporation. While Article 625 is headed "Distributions in Liquidation," section 115 (h), 26 USCA § 2115 (h) defines its scope by providing: "As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

Retirement of a portion of the stock of a corporation does not wind it up and, under subsection (c), 26 USCA § 2115 (c), the "distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b)."

■ The last question is whether the distribution was so "essentially equivalent to the distribution of a taxable dividend" as to fall within section 115 (g), 26 USCA § 2115 (g). That subsection is as follows: "(g) Redemption of Stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock

dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. * * *"

The foregoing provision was evidently aimed at capitalizations of earnings which had no fair business object and were intended merely to evade the payment of taxes. If the Woonsocket Worsted Mills had thus increased its capital stock and had then reduced it and distributed such earnings, as had been impounded, there can be no doubt that the distribution would have been "essentially equivalent to * * * a taxable dividend." Robinson v. Commissioner, 69 F.(2d) 972, 973 (C. C. A. 5). But here there was good reason for increasing the capital stock in order to have a capital adequate to the needs of an expanding business. That motive dictated the increase and there is not the slightest claim that it was not both sincere and justified by sound business judgment. Both the increase and the subsequent decrease were in every proper sense made in the course of business and to meet legitimate corporate needs.

We can see no difference between capitalizing surplus earnings and investing them in plant or in using them, when so capitalized, as working capital that is advantageous for the conduct of the business. Here the earnings were not temporarily impounded, but subjected to the risk of the business of the Woonsocket Worsted Mills for eight years. The language of subsection (g) making the test whether the redemption and distribution are "essentially equivalent to * * * a taxable dividend" depend on the "time" and "manner" of redemption clearly shows that not every redemption of stock and distribution of capitalized earnings which have accrued since February 28, 1913, is "essentially equivalent to * * * a taxable dividend." A long series of decisions of the Board of Tax Appeals has made the test of whether a distribution is "essentially equivalent to * * * a taxable dividend" turn on whether the capitalization was for an honest business purpose and that again to depend on the particular facts of each case. In the case at bar there was ample proof

to justify and even to require the Board to find that the purposes of the corporation were legitimate.

The decisions of the courts fully sustain the views that the Board of Tax Appeals have adopted. Commissioner v. Cordingley, supra (C. C. A. 1); Randolph v. Commissioner, 76 F.(2d) 472 (C. C. A. 8); Hyman v. Helvering, 62 App. D. C. 221, 71 F.(2d) 342; Commissioner v. Babson, 70 F.(2d) 304 (C. C. A. 7); Commissioner v. Brown, 69 F.(2d) 602 (C. C. A. 7).

Order affirmed.