## KELLY et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 253.

Circuit Court of Appeals, Second Circuit.

June 20, 1938.

916

White & Case, of New York City (Russell D. Morrill and Francis L. Casey, both of New York City, of counsel), for petitioners.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

A joint return was filed by the petitioners for 1932, wherein they claimed a capital loss sustained upon surrender by the petitioner, Orie R. Kelly, of one-half of his stock in the County Trust Company of New York for $2,700 in cash and voting trust certificates for 135 shares of stock of the County Improvement Corp., a subsidiary of the Trust Company.

On September 14, 1932 the Trust Company was capitalized for four million dollars, consisting of 160,000 shares of the par value of $25 each. About that time, by proper corporate action, it was reduced to two millions consisting of 80,000 shares of the par value of $25 each. This reduction of capital was approved by the Superintendent of Banks of New York. The Trust Company undertook to distribute to its stockholders the two million dollars by which the capital stock was reduced.

This partial distribution was made by the stockholders surrendering their certificates of the Trust Company stock for new certificates equal to 50% of the number of shares represented by the certificates surrendered and $10 in cash and voting trust certificates representing one-half share of

Improvement Corporation stock for each share retired and cancelled. The petitioner surrendered his certificates for 540 shares of Trust Company stock and, in accordance with the change in capital structure effected in October, 1932, received certificates for 270 shares of Trust Company stock, voting trust certificates for 135 shares of the County Improvement Corporation, which had a market value of $12 per share and $2,700 in cash. Prior to the change in the capital structure on October 20, 1932, the stock outstanding was held by approximately 600 stockholders.

Petitioners, in their return for 1932, deducted a capital net loss of $2,606.25 on the shares purchased prior to November 8, 1930 which was the difference between $3,320.25 the cost of the Trust Company shares which had been held for more than two years, and $714, the amount realized, which represented $10 per share in cash for 68 shares surrendered, plus voting trust certificates for 34 shares of the Improvement Company stock valued at One dollar per share. Petitioner contended that he sustained a capital net loss of $4,464.50 and an ordinary loss of $10,432 or a total of $14,896.50.

The Board of Tax Appeals held that the distribution was not taxable as a dividend; that it was made in good faith for the purpose of retiring part of the stock of the Trust Company. It decided, however, that the taxpayer was not entitled to any deduction for a capital loss and the questions presented are whether this was a partial liquidation as defined in § 115(h) of the Revenue Act of 1932 (47 Stat. 169, 204, 26 U.S. C.A. § 115(i) and whether the petitioner sustained a deductible capital loss in the amount of the excess of cost of one-half of his Trust Company stock which he surrendered over the amount of cash and fair market value of the Improvement Company stock received.

Section 115(c), 26 U.S.C.A. § 115 note, provides in part: "* * * amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112". ·

And § 115(h), 26 U.S.C.A. § 115(i), defines partial liquidation: "as used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock * * *."

The partial liquidation of the County Trust Company stock was similar to that in Com'r v. Quackenbos, 2 Cir., 78 F.2d 156. In that case the corporation increased its capital by a stock dividend making a capital of $1,200,000 divided into 12,000 shares of $100 each. Subsequently the capital was reduced to $800,000. This was effected by the purchase by the corporation from its shareholders of 4,000 shares of stock at $90 per share. This court held that a redemption by a corporation of part of its stock has no necessary relation to the winding up of the corporation; that there was a bona fide reduction of capital and that § 115(g), 26 U.S.C.A. § 115(g), was intended to cover a situation where there is capitalization of earnings with no honest business object but merely to evade taxes. We held there was a partial liquidation within § 115(h), 26 U.S.C.A. § 115(i), and that the gain to the taxpayer was only the difference between the cost price per share and the liquidation price per share. In Com'r v. Cordingley, 78 F.2d 118, the First Circuit Court of Appeals reached the same result as in the Quackenbos Case, holding that sums paid in retirement of stock are not taxable as dividends unless retirement was in pursuance of a plan formed at the time the stock was originally issued or as a cloak for the distribution of earnings. See, also, Com'r v. Babson, 7 Cir., 70 F.2d 304; Com'r v. Rockwood, 7 Cir., 82 F.2d 359.

In the instant case there was a return of capital, not a dividend. The corporation returned to its stockholders 50% of the capitalization.

The Commissioner refers to § 112(b)(2), 26 U.S.C.A. § 112(b)(2), which covers an exchange of stock and provides: "No gain or loss shall be recognized if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation."

And subdiv. (e), 26 U.S.C.A. § 112(e), which provides: "If an exchange would be within the provisions of subsection (b)(1) to (5), inclusive, of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from exchange shall be recognized."

The only exchange of shares of stock here was the exchange of one-half of the Trust Company shares which were cancelled for cash and Improvement Company stock which was a partial liquidation under § 115(h), 26 U.S.C.A. § 115(i); the remaining half of the Trust Company stock was not surrendered, exchanged or otherwise affected. New certificates were issued to evidence the reduced number of Trust Company shares and the reduction in the Trust Company capital. The surrender of the certificates was incidental to the prorata reduction and for the purpose of having the new certificates show the correct capital and the number of shares. By appropriate corporate action, the capital and number of shares were reduced and the reduction was effective regardless of any change in the stock certificates. When the reduction was effective, the old certificates represented just one-half as many shares and half the capital stated on their face. The distribution of cash and Improvement Company stock was in payment for the one-half of the stock which was cancelled and retired. These facts, therefore, do not make § 112(b)(2) and § 112(e) applicable. It was a partial liquidation under § 115(h) and (c) and the loss sustained is fully deductible.

The respondent refers to Hellman v. Helvering, 63 App.D.C. 18, 68 F.2d 763. The corporation there was controlled by a single shareholder whose investment of $150,000 was divided into 1,500 shares. During the first five years the corporation sustained operating losses amounting to $26,000. The loss was then cancelled by a reduction of stock from $150,000 to $100,000 and the excess of assets over the then outstanding capital was called surplus and paid out to the single stockholder. The Court held that the taxpayer was not entitled to a deduction for loss, stating that (page 765) "what actually occurred in this case was that petitioner, after the corporation had obtained the authority of the state to change its capital structure, surrendered his entire stockholdings and received back a smaller number of shares, and, on the new basis, the company, having a surplus of assets over liabilities, distributed this surplus to him as the holder of all its capital stock."

The basis of the court's decision was the fact that the taxpayer owned all the stock in the corporation and controlled its actions, and that the transaction in question was a bookkeeping manipulation to create a loss rather than a bona fide attempt to retire part of the outstanding stock.

Decision reversed.