### PATTY v. HELVERING, Com'r of Internal Revenue.

#### No. 12.

Circuit Court of Appeals, Second Circuit.

July 18, 1938.

Charles C. Parlin and John P. Ohl, both of New York City, for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Morton K. Rothchild, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This case arises on a petition to review an order of the Board of Tax Appeals, assessing the taxpayer for a deficiency in his income for the year 1928. He was a stockholder of a corporation which through two cash payments on March 6th and March 27th, 1928, decreased its outstanding capital from $2,500,000 to $1,750,000, by reducing the par value of each share from $100 to $70. He claims that this reduction fell within § 115(c) of the Revenue Act of 1928, 26 U.S.C.A. § 115 note, because the payments were "amounts distributed in partial liquidation of a corporation", a partial liquidation being defined by § 115(h), 26 U.S.C.A. § 115(i), as "a distribution by a corporation in complete cancellation or redemption of a part of its stock." (The Commissioner does not assert that the distributions at bar were not "in complete cancellation or redemption" of a part of the company's shares, and arguendo we therefore assume that they were). The corporation was formed by a consolidation of several others in the year 1925. A stock dividend of $92,000 had been declared in 1913 out of the accumulated earnings of the constituent companies, and another of $250,000 in 1917; at the time of the consolidation a further stock dividend of $740,000 was declared by the new corporation. The total accumulated earnings of all the constituent companies and of the consolidated company after February 28, 1913 was $1,362,000, all of which were exhausted if the stock dividends be charged against them; but if these be disregarded, the distributions can, and under § 115(b), 26 U.S.C.A. § 115(b), must, be charged against earnings accumulated after February 28, 1913, and the deficiency was rightly assessed. The taxpayer says that stock dividends by impounding the earnings turn them into capital, and make § 115(b) inapplicable: the Commissioner, that they leave earnings unaffected for taxing purposes. As an alternative he also says that in any event the distributions at bar were taxable under subd. (g), 26 U.S.C.A. § 115(g), as "essentially equivalent to the distribution of a taxable dividend". The Board held that stock dividends have no effect upon earnings for tax purposes, and it assessed the deficiency on the theory that the distributions were not "liquidating" dividends.

Congress might have taxed any earnings of a company when they were distributed to the shareholders, whether or not they were in "liquidation" of outstanding shares. They are income, and the fact that shares have been issued against them and impound them, so as to prevent their distribution, is not material under the Sixteenth Amendment, U.S.C.A.Const.Amend. 16. Nevertheless, the character of a stock dividend for all other purposes than taxation depends upon the local law; substantially upon how far the state of incorporation regards a company's capitalization as an assurance to its creditors; such a dividend takes the earnings out of the control of the company and impounds them until dissolution or cancellation of the shares. To treat the earnings as still earnings is to disregard this, and would indeed postpone liquidation of a company until after its subscribed capital began to be distributed. In the case of old companies, which have saved and invested their earnings, this would often be hard to apply. For example, if their capital had become impaired, and they had used earnings to make up the deficit, it would be a strong doctrine to hold that even these remained taxable; yet there seems to be no less reason for doing so than for denying them the quality of capital when a stock dividend has been issued against them. We do not believe that people regard earnings as maintaining their character in such cases; certainly not when the shares have a par value. Rather, the share increase is thought of as absorbing them just as an original issue absorbs its subscription price; all the capitalized assets are capital regardless of their source. Congress must have used the words of section 115 in this, their usual, sense. When it spoke of a "liquidating" dividend, and especially when in § 115(h), 26 U.S.C.A. § 115(i), it defined this as a "redemption or cancellation of shares", it can hardly have meant us to resort to their consideration as a test. And this conclusion § 115(g), 26 U.S.C.A. § 115(g), confirms in the phrase, "if a corporation cancels or redeems its stock (whether or not such stock was issued as a *stock dividend)*". There at any rate both kinds of issue are put on the same plane; yet the cancellation or redemption of shares in that section must have included all shares mentioned in § 115 (c), 26 U.S.C.A. § 115 note, for the two sections are complementary. Walker v. Hopkins, 5 Cir., 12 F.2d 262, does not support the contrary view. There was a bal-

ance of earnings on which § 115(b), 26 U. S.C.A. § 115(b), could take hold after the stock dividend had been charged against them; and the case merely considered how earnings before March 1, 1913 should be marshalled. Nolde v. United States, 64 Ct. Cl. 204, was to the same effect.

The Commissioner's second point is that, assuming that the distributions at bar were "liquidating dividends", they were "essentially equivalent to the distribution of a taxable dividend", and were therefore taxable under § 115(g). As there used, "taxable dividends" include all dividends other than "liquidating dividends", for all others are taxable in fact, and "liquidating dividends" alone are not taxable. Section 115 (g) applies therefore to all dividends which, though "liquidating" in form, are not so in fact; and that must at least include all which distribute earnings, capitalized by stock dividends, which have themselves been issued merely to escape taxes; for the shares redeemed or cancelled must be understood as shares issued for business purposes. Gregory v. Helvering, 293 U.S. 465, 55 S. Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. The courts have more commonly than not limited the section to such situations. Commissioner v. Brown, 7 Cir., 69 F.2d 602; Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342; Commissioner v. Cordingley, 1 Cir., 78 F.2d 118; Commissioner v. Quackenbos, 2 Cir., 78 F.2d 156; Kelly v. Commissioner, 2 Cir., 97 F.2d 915. It is true that the regulations (Art. 629, Regulations 74) say that the question "depends upon the circumstances of each case," which is of course true of every controversy; and at times this appears to have been supposed to justify the abandonment of any constitutive principle whatever. To that we cannot assent, nor can we see what other test there is than that which we have just mentioned. Therefore we hold that if redeemed shares have been issued bona fide, § 115(g), 26 U.S.C.A. § 115(g), never applies. There is no possibility of abuse in this, for § 115(b), 26 U.S. C.A. § 115(b), controls the marshalling of earnings, and ex proprio vigore allocates all distributions against them so long as there are any. We do not therefore agree with the reasoning of such cases as Hill v. Commissioner, 4 Cir., 66 F.2d 45, which upheld the taxation of distributions of liquidating shares which concededly had been issued for business purposes; though there are other decisions which seem to support

such an interpretation. Randolph v. Commissioner, 5 Cir., 76 F.2d 472; Brown v. Commissioner, 3 Cir., 79 F.2d 73; McGuire v. Commissioner, 7 Cir., 84 F.2d 431; Parker v. United States, 7 Cir., 88 F.2d 907. We shall continue to follow Commissioner v. Quackenbos, supra, 78 F.2d 156, until the Supreme Court makes authoritative a different interpretation. In the case at bar there can be no suggestion that the stock dividends of 1913, 1917 and 1925 were not issued in due course of business.

Order reversed; deficiency expunged.