## MALONE v. COMMISSIONER OF INTERNAL REVENUE.

No. 10216.

Circuit Court of Appeals, Fifth Circuit.

June 27, 1942.

William H. Watson and Clarence J. Brown, both of Pensacola, Fla., for petitioner.

Archibald Cox, Atty., Office of Sol. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen.,

J. Louis Monarch, Sewall Key, Morton K. Rothschild, Sp. Assts. to the Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

This is a test case to determine the effect on the income taxes of stockholders of a national bank, produced by a recapitalization in the tax year 1937. The American National Bank of Pensacola, Florida, had capital in excess of its needs, and a plan to reduce it was submitted to and approved by the Comptroller of the Currency. Pursuant thereto, on due corporate proceedings, the eight thousand shares, par value $100.00, were reduced to four thousand shares, par value $100.00; $250,000 was distributed to stockholders prorata in cash, and $165,000 transferred to surplus account. Each stockholder surrendered his stock certificate and received another for half as many shares, and also $62.50 for each old share thus extinguished. Before the operation the book value of each share was $138.00. Afterwards the book value was $214.00. Each stockholder of course retained the same proportionate interest in the bank's assets he had before. The taxpayer here surrendered one hundred and seventy shares and received back a certificate for eighty-five shares and $5,312.50. In her income tax return she claimed a capital loss of the difference between the amount of cash received and the cost of the eighty-five shares, cancelled, deducting sixty percent thereof. The Commissioner disallowed the loss. The Board of Tax Appeals sustained the Commissioner, following its opinion in Orie R. Kelly v. Commissioner, 36 B.T.A. 507, although it was reversed by the Circuit Court of Appeals of the Second Circuit, 97 F.2d 915.

We agree with the Board that Kelly's case is like this one; but we think the Court of the Second Circuit was right in following the clear words of the statute defining distributions of a corporation in liquidation, and the effect of them, rather than the Board's idea that there could not be such a distribution by a redemption of stock unless there was "a return by the corporation of the *full value* of those shares which are redeemed." That the

plain words of the tax statute are to be followed has just been decided in Helvering v. Credit Alliance Corporation, 62 S.Ct. 989, 86 L.Ed. ——. The plain words here are, Revenue Act of 1938, Sec. 115(c), 26 U.S.C.A. Int.Rev.Acts, page 1056, "Distributions in liquidation.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112." Section 111, 26 U.S.C.A. Int.Rev.Acts, page 1041, relates to the usual ascertainment of gain or loss on sales and other dispositions of property. Section 112, 26 U.S.C.A. Int.Rev.Acts, page 1041, makes some exceptions, such as exchanges of stock for stock in the same corporation, or for stock or securities in a reorganization, and in those cases, by Section 112(e) if property or money is received in addition to the corporation's stock and securities, still no gain or loss is to be recognized. These exceptions are not applicable here. There was no reorganization, but only a reduction of the bank's capital. There was no exchange of stock for stock. Old certificates were surrendered and new ones issued, but of precisely the same kind, just as though the surrendered stock had been in fact sold to some third person and a certificate for the remaining shares had been issued to the seller. What is applicable is Section 115(i): "Definition of partial liquidation.—As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock." It is conceded that a partial liquidation may occur without an intention to discontinue business. By the definition, it occurs when a part of the corporation's stock is completely cancelled or redeemed. It does not matter what is paid for it, whether its whole value or less, so long as the stock is finally and completely cancelled and redeemed. If less than present value is paid the corporation has a sort of potential gain which is reflected in an increased value of the unredeemed shares, as in this case, which the stockholders may realize when they dispose of their unredeemed stock. It is not a present

measurable gain to them any more than other sorts of profitable dealing by the corporation would be. The transaction of surrendering stock for cancellation for a consideration is seized upon by the statute and declared equivalent to a sale of the shares, on which a tax must be paid presently if a gain is thereby made. Equally when a loss is made, there is a sale of an investment, in this case a capital asset, on which a deduction may be claimed. We agree with the Second Circuit in the interpretation and application of the statute. The judgment is accordingly reversed, and further proceedings directed consistent herewith.