**VESPER CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 12257.

Circuit Court of Appeals, Eighth Circuit.

Nov. 3, 1942.

Rehearing Denied Dec. 2, 1942.

Crawford Johnson, of St. Louis, Mo. (R. H. McRoberts and Bryan, Williams, Cave & McPheeters, all of St. Louis, Mo., on the brief), for petitioner.

Earl C. Crouter, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Gerald L. Wallace, and Morton K. Rothschild, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Petitioner seeks a review of a decision of the Board of Tax Appeals, 44 B.T.A. 1274, which redetermined a deficiency of $3,285.19 in its income tax for the year 1936.

The deficiency arose out of petitioner's attempt to deduct as a capital loss, under section 115(c) and (i) of the Revenue Act of 1936,[1] 26 U.S.C.A. Internal Revenue Acts, pages 868 and 871, the difference between the amount received by it from a purported redemption and cancellation by West Side Buick Auto Company of part of the capital stock of that corporation and the sum which petitioner had paid the auto corporation for the stock some six years before. The Board held, as had the Commissioner, that, on the facts of the situation, the sum received by petitioner was essentially equivalent to the distribution of a taxable dividend under section 115(g) of the Act,[2] 26 U.S.C.A. Internal Revenue Acts, page 870, and was taxable as

---

[1] "§ 115. Distributions by Corporations.

\*　　\*　　\*　　\*　　\*

"(c) Distributions in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. For the purpose of the preceding sentence, 'complete liquidation' includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the

close of the taxable year during which is made the first of the series of distributions under the plan. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits.

\*　　\*　　\*　　\*　　\*

"(i) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock."

[2] "§ 115. \* \* \* (g) Redemption of stock. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially

such, and that the transaction therefore could not afford the basis for a capital loss deduction.

The auto corporation had a stated capital of $100,000, for which one thousand shares of stock had been issued and were held by three stockholders, of whom petitioner was one. On January 1, 1936, the corporation had a capital deficit of slightly over $27,000 from its previous years' operations. During the first eleven months of 1936, however, it had made earnings of $12,000, and a further profit was anticipated for the month of December. It was admitted that the corporation wanted to avoid converting these current earnings into capital and thereby subject itself to the undistributed profits surtax under section 14 of the Act, 26 U.S.C.A. Internal Revenue Acts, page 823. The record further shows that the corporation was desirous of distributing the earnings which it had made in such a way among its stockholders as would entitle it to claim a dividends paid credit under section 27 of the Act, 26 U.S.C.A. Internal Revenue Acts, page 837. The difficulty which confronted it was that, under section 5347, Mo.Rev. St.1939, Mo.R.S.A. § 5347,[3] it could not, because of its capital deficit, legally declare an ordinary dividend without subjecting its directors to a personal liability. In this dilemma it sought legal advice and, under the direction of counsel, a distribution plan was worked out among the officers and the stockholders of the corporation.

The three stockholders, at a special meeting on December 1, 1936, adopted a resolution which provided that the capital of the auto corporation should be reduced from $100,000 to $70,000, by retiring three hundred shares of the outstanding stock pro rata among the stockholders, and that there should be declared "a liquidating dividend of $12,500 in full payment and exchange for the 300 shares of capital stock of the corporation to be retired". Petition-

er thereupon surrendered its stock certificate and, with the other stockholders, received from the auto corporation a new certificate for seventy per cent of the number of shares which it previously held and a payment of its proportionate share of the $12,500 earnings. The corporation cancelled the surrendered stock and amended its articles of incorporation to show the reduction in capital.

On its face, the situation appeared to present an effectual solution of the difficulties of the corporation and its officers and an omnibus immunity from tax liability for all the parties concerned. By the transaction, current earnings of $12,500 were distributed to stockholders; the capital deficit of the auto corporation was eliminated; its capital assets were unaffected either in amount or in their relationship to the three stockholders; the corporation sought and was subsequently allowed a dividends paid credit for the distribution which it made; the corporation and the stockholders accomplished their undisputed purpose of enabling the corporation to escape the burden of an undistributed profits surtax; the stockholders further contended that the plan also was a mere liquidation, which left no tax obligation upon them for the payments they had received, and that, in addition, they were entitled to make a deduction, against their other income for the year, of approximately $58 per share on the stock surrendered and cancelled, as a capital loss.

The Board held, as we have indicated above, that under all the circumstances of the transaction, the payment received by petitioner was essentially equivalent to the distribution of a taxable dividend under section 115(g) of the Act, 26 U.S.C.A. Internal Revenue Acts, page 870, and that petitioner was taxable accordingly. The Board's opinion points out that the corporation admittedly wanted to make a distribution of the current earnings in-

equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

[3] "§ 5347. Dividends of the profits made by the corporation may be declared by the trustees or directors thereof every six months, or oftener, as the directors may elect; but no such dividends shall be made and paid to stockholders while

such corporation is in an insolvent condition; and if the directors of any such corporation shall knowingly declare and pay any dividend when the corporation is insolvent, or any dividend the payment of which would render it insolvent, or which would diminish the amount of its capital stock, they shall be jointly and severally liable for all the debts of the corporation then existing, and for all that shall be thereafter contracted while they shall respectively continue in office * * *."

volved, as an ordinary dividend, except for the prohibition which it faced under the Missouri statutes, by reason of its capital deficit; that the real object of the plan adopted, through the cooperation of the stockholders, was not to effect a contemplated reduction in the corporation's stated capital for business purposes, but to enable it to dispose of its earnings to the stockholders without violating Missouri law; that the amount paid to the stockholders for the stock surrendered was not determined "upon any basis of its value, book or otherwise", but "was computed solely by dividing substantially all the net earnings for 1936, which it was desired to distribute, among the outstanding shares of capital stock" and "thus, net earnings of the company for 1936, alone, were intended to be and were distributed"; that "each of the three shareholders of the company owned the same proportion of its business and assets after the 'liquidation' as before"; that, by virtue of the plan and the cooperation and participation of the stockholders therein, "the company did avoid the imposition of surtax on these earnings, under section 27 of the Revenue Act of 1936"; and that, on all the facts, the distribution should be held to have been made, within the language of the Act, "at such time and in such manner as to [be] * * * essentially equivalent to *the distribution*" of a taxable dividend.

Petitioner, as a justification or purported motive for the plan adopted, offered evidence to show that the district manager of the Buick Auto Company, from which West Side Buick Auto Company held a local franchise or distributing contract, had on several occasions, between 1930 and 1936, suggested to it that it was overcapitalized for the volume of its available business. This fact, however, would not be controlling on the Board's views and inferences from all the other circumstances of the situation, and especially so since there was nothing to indicate that petitioner ever previously had agreed with the district manager's opinion or had contemplated taking any action with respect to it.

▆▆▆▆ The rule ordinarily applicable to a situation where the Board has found that a distribution in connection with the cancellation or redemption of corporation stock is nevertheless equivalent, on the facts of the particular situation, to the distribution of a taxable dividend was stated thus, in Randolph v. Commissioner, 8 Cir., 76 F.2d 472, 476:[4] "The question as to whether a distribution in connection with the cancellation or redemption of stock is essentially equivalent to a distribution of a taxable dividend is one of fact dependent upon the circumstances of each case. * * * The determination of the Board of Tax Appeals of a question of fact will not be examined by this court beyond ascertaining whether its finding is sustained by substantial evidence. * * * And even though the evidence before the Board is undisputed, the finding of the Board will not be disturbed by this court if different inferences may reasonably be drawn from such evidence." Other Circuit Courts of Appeals appear to have taken a similar view.[5]

---

4 Certiorari denied 296 U.S. 599, 56 S. Ct. 116, 80 L.Ed. 425.

5 Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342, 345; McGuire v. Commissioner, 7 Cir., 84 F.2d 431, 432–435; Brown v. Commissioner, 3 Cir., 79 F.2d 73, 74; Commissioner v. Babson, 7 Cir., 70 F.2d 304, 306; Commissioner v. Champion, 6 Cir., 78 F.2d 513, 514; Commissioner v. Straub, 3 Cir., 76 F.2d 388; Commissioner v. Cordingley, 1 Cir., 78 F. 2d 118, 120, 121; Hirsch v. Commissioner, 9 Cir., 124 F.2d 24.

In some of the cases cited, the Board had held that the distribution and stock cancellation involved were equivalent to the distribution of a taxable dividend, and in the others that they were not, but in each instance the court affirmed the Board's inferences and conclusions on the facts and circumstances of the situation presented. In several of these cases applications for writs of certiorari were made to the Supreme Court, but such applications were denied. There are other cases also in which the Board's decision has been affirmed, but without reference to or enunciation of the rule that, whether a distribution and cancellation of stock are made at such time and in such manner as to make them essentially equivalent to the distribution of a taxable dividend is fundamentally a question of fact for the determination of the Board from the circumstances of the particular situation involved. See Commissioner v. Brown, 7 Cir., 69 F.2d 602; Commissioner v. Rockwood, 7 Cir., 82 F.2d 359; Robinson v. Commissioner, 5 Cir., 69 F.2d 972.

In two cases, however, the Second Circuit has reversed the Board's decision

Petitioner argues, however, that this rule "never applies if the stock which is redeemed has been issued bona fide and not merely for the purpose of distributing earnings, capitalized by stock dividends which have themselves been issued merely to escape taxes." Patty v. Helvering, 2 Cir., 98 F.2d 717, Kelly v. Commissioner, 2 Cir., 97 F.2d 915, and Malone v. Commissioner, 5 Cir., 128 F.2d 967, support petitioner's contention, but we are unable to agree with the view of these cases that section 115(g) requires or is entitled to any such rigid and absolute construction. The language of the section does not of itself thus restrict the scope of its application, and the terms used seem to us, on the contrary, to comprehend and contemplate the scrutiny, consideration and appraisal of the nature and effect of every stock redemption or cancellation transaction between a corporation and its stockholders. The statute indicates specifically that its applicability is unaffected by "whether or not such stock was issued as a stock dividend". It prescribes, as its only test, whether the cancellation or redemption in any case has been made "at such time and in such manner as to make the distribution and cancellation or redemption * * * essentially equivalent to the distribution of a taxable dividend". This, it seems to us, as we have indicated above, implies a weighing of the facts and circumstances of every stock redemption or cancellation transaction, a finding as to its nature and effect in relation to the time and manner of the distribution and cancellation or redemption, and a conclusion or an inference as to whether in the particular situation a distribution of earnings has in fact been made "through the guise of stock redemption". [6] Or, as it has appropriately been expressed in Article 115—9, Treasury Regulations 94 promulgated under the Revenue Act of 1936, "The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case."

The view which we have expressed necessarily implies that the question fundamentally is one of fact for the Board's determination. If the Board finds, on direct evidence or reasonable inference from the facts and circumstances of a particular situation, that the stock redemption or cancellation was made at such time and in such manner as to make the distribution essentially equivalent to a taxable dividend, then it may properly declare that the transaction was, in nature and effect for revenue purposes, the distribution of a taxable dividend, no matter what may be the technical significance of the things done as a matter of general or local law. This, of course, does not mean that the Board arbitrarily can hold every stock cancellation or redemption to be equivalent to the distribution of a taxable dividend, nor has it so undertaken to do in its past decisions on the question. The Board's determination obviously must be reasonable on the facts and circumstances of the particular case, but, in probing and admeasuring the motives, objectives and tax results of a skilfully counseled and carefully planned course of corporate action in relation to a particular time and manner of distribution and stock cancellation or redemption, the Board is entitled to a fair latitude of interpretative inference, and its findings will not be disturbed on review unless they are clearly unwarranted as a matter of sound factual and legal implication. The facts of a tax situation are not always as frankly disclosed as they commendably have been by petitioner in the present case.

Applying the rule and tests which we have indicated, we are unable to say that the Board's inferences here are so unwarranted and unreasonable as to be capricious and arbitrary and without reasonable support in the evidence. The normal way for a corporation to redeem

and has laid down the rule, as a "constitutive principle", that, if the corporation redeems stock which was originally issued bona fide and not as a device to escape taxes, section 115(g) of the Revenue Act can have no possible application, no matter what the time or manner of the distribution and cancellation may have been. Patty v. Helvering, 2 Cir., 98 F.2d 717; Kelly v. Commissioner, 2 Cir., 97 F.2d 915. See, also, Commissioner v. Quackenbos, 2 Cir., 78 F.2d 156.

In the recent case of Malone v. Commissioner, 5 Cir., 128 F.2d 967, at page 968, reversing the Board, the Fifth Circuit appears to have adopted this same absolute rule, and in its opinion, declared: "We agree with the Second Circuit in the interpretation and application of the statute."

[6] Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342, 345.

capital stock is from assets which have legitimately been made a part of its capital. So far as the revenue laws are concerned, the earnings here involved could not properly have been converted into capital except by the payment of an undistributed profits surtax, which was the very thing that both the corporation and the stockholders were attempting to avoid. The stockholders joined in the plan of distributing the current earnings for the express purpose of assisting in eliminating the necessity for such a tax and of enabling the corporation to claim a dividends paid credit. Whether the factual result might have been different if petitioner had not participated in the purpose and execution of the plan, but had merely surrendered its stock in regular course, in response to a resolution of the board of directors, and accepted the distribution made in full liquidation thereof, with no concern for the tax problems of the corporation in connection with the situation, there is no occasion for us to consider. Under all the circumstances here presented, however, we have no right to say that the Board was not justified in concluding that, in view of the express participation of the stockholders in the entire plan, and the nature and effect of the things done, the cancellation or redemption was made at such time and in such manner as to make the distribution essentially equivalent to the distribution of a taxable dividend.

Petitioner further contends that, even if the distribution be held to be the equivalent of a taxable dividend, still no tax should be imposed under section 115 (g), since the distribution was made out of current earnings and not out of accumulated earnings, and the statute was intended to have application to such a distribution only "to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913". But this argument overlooks the general definition of a dividend in section 115(a) of the Revenue Act, 26 U.S.C.A. Internal Revenue Acts, page 868, that "The term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders * * * (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution

was made."[7] It would be an unreasonable construction of section 115(g) to hold that it was intended to ignore the general definition of dividends in section 115(a) and to draw a technical distinction between current and accumulated earnings for the purpose of creating a tax immunity in a situation such as the present one. Probably the only effect that can reasonably be given to the reference to earnings and profits accumulated after February 28, 1913, in section 115(g) is to re-emphasize—though perhaps somewhat redundantly—that distributions of earnings and profits accumulated prior to the date mentioned are excluded from the operation of the statute.

The decision of the Board of Tax Appeals is affirmed.

---

7 See S. Rep. No. 2156, 74th Cong., 2nd Sess., p. 18.