OPINION. Opper, Judge: Although the multiplex issues are distinct they are so interconnected that it is difficult to discuss them separately. For the sake of precision, however, an attempt will be made to do so. 1. Compensation. Eespondent has charged petitioner with income as a result of the receipt by him of stock in four controlled building corporations, of which he was promoter, and which respondent says is compensation for services. The four situations are sufficiently similar for a single discussion. Petitioner, as promoter, hired an architect for the project. The agreement was that a comparatively small amount of cash was to be paid him, and the balance of the architect’s fee[1] shown on the cost estimate submitted to F. H. A. was paid in stock. This was immediately and by prior agreement assigned by the architect to petitioner. On these facts respondent says, first, the stock had no fair market value when issued, but was compensation when the projects became complete; if not, petitioner realized income, not when he received the stock, but when he sold it or had it redeemed; or finally, if- it was income when received it had a fair market value equal to par. We think the stock was income to petitioner when received, and not later. See Robert Lehman, 17 T. C. 652. Petitioner so contends alternatively. It was presumably issued lawfully, see Washington Post Co., 10 B. T. A. 1077, and if so, under local law, Gen. Stat. of N. C., sec. 55-62, and the operative facts, including the representation to F. H. A., could only have been in consideration for services. Whether they were the architect’s services in the payment for which he was allowing petitioner to share for procuring the work, or whether petitioner himself can be considered as rendering services, architectural or otherwise, we need not pause to inquire. In any event the stock, when received, represented ordinary income to petitioner, as a part of the compensation paid by the corporations for services. Walter M. Priddy, 43 B. T. A. 18; Davis v. Commissioner, (C. A. 6) 81 F. 2d 137. For similar reasons we are unable to agree that the stock had no fair market value at that time. We have found that, in fact, it was worth par. All the legal and factual considerations confirm this. See, e. g., Gen. Stat. of N. C., supra. Although there were restrictions on its immediate redemption, there were none on its transfer, and these were not, in our opinion, sufficient to reduce its value in petitioner’s hands to a nominal amount or deprive it of any fair market value. T. W. Henritze, 28 B. T. A. 1173; see Society Brand Clothes, Inc., 18 T. C. 304, 317; cf. Harold II. Kuchman, 18 T. C. 154. The consequence of this disposition is that the stock in one of the corporations was received in a year not before us. Petitioner concedes that the stock of the other three corporations was received by petitioner in the year 1949. He contends that if taxable to petitioner as compensation for 1949 his basis for the stock upon disposition must be correspondingly increased. Respondent does not contest this proposition and admits that the stock in the three corporations would take as its basis the fair market value at which it is now to be included in ordinary income. But he urges that the stock of the one corporation received in ah earlier year has no basis. Petitioner makes no contrary contention and this question is apparently not in issue. This brings us to the matter of how disposition of the stock in the years before us is to be treated. #. Redemption of Stock. That the transactions in question were redemptions at such time and in such manner as to be essentially the equivalent of taxable dividends [2] would admit of little argument if the corporations had had sufficient earnings and profits. The over-all effect is the guiding consideration. Flanagan v. Helvering, (C. A., D. C.) 116 F. 2d 937; Boyle v. Commissioner, (C. A. 3) 187 F. 2d 557, certiorari denied 342 U. S. 817. And here there is almost no factor outside the formalities which lends a semblance of actuality to the procedure of turning in stock and receiving cash therefor. But except for the comparatively small amount of stipulated earnings, the Gross case[3] admittedly stands as an insuperable barrier to the treatment of these distributions as dividends. Respondent insists that that case was an erroneous application of the law and relies, as he did there, on Commissioner v. Hirshon Trust, (C. A. 2) 213 F. 2d 523, certiorari denied 348 U. S. 861, and Commissioner v. Godley’s Estate, (C. A. 3) 213 F. 2d 529, certiorari denied 348 U. S. 862. But here, as in the Gross case, he has in effect stipulated himself out of Court. Whatever possibility there might be of arguing that petitioner’s exertions created earnings for the corporations represented by the excess value of the cash received from F. II. A. over the basis of its properties has been eliminated by the concession that earnings or _profits did not exist beyond the stipulated figures. Availability of profits for the declaration of taxable dividends, whether or not the result of balance sheet treatment, is a subject not dealt with in General Utilities & Operating Co, v. Helvering, 296 U. S. 200. But on these facts it can likewise not be decided here. The critical weakness of respondent’s position is perhaps best illustrated by a quotation from his brief: “Whether the applicable section of the Code is section 22 (a) or section 115 (a) is of no taxable consequence, since under either section the distributions are fully taxable at ordinary income rates.” (Emphasis added.) The obvious difficulty is that section 22 (a) is qualified by section 22 (e), which refers to section 115 for the method of taxing corporate distributions[4] And section 115 (a) requires for a distribution to be a dividend that it be out of “earnings or profits.” Absence of the latter is hence a critical consideration. Section 115 (j) becomes applicable only after it has been determined that there was a dividend. We see no basis upon which we may depart from the theory of the Gross case. And see Harry Handley Cloutier, 24 T. C. 1006. There is a dispute between the parties as to how much was available for distribution as “earnings or profits.” Essentially, petitioner insists that current earnings — as distinguished from “accumulated earnings” — cannot be included. But the word “dividend”[5] in section 115 (g) must reasonably be equated with the definition of that word in section 115 (a), where the inclusion of both types is explicit. This was not accidental. H. Eept. (Mar. 26, 1936), 74th Cong., 2d Sess. (1936), p. 6; S. Eept. No. 2156, 74th Cong., 2d Sess. (1936), p. 18; 1939-1 C. B. (Part 2) 689. “Equivalence” to a dividend under section 115 (g) means only that the source shall be either of those mentioned in section 115 (a). Vesper Co. v. Commissioner, (C. A. 8) 131 F. 2d 200, affirming 44 B. T. A. 1274. And the reference in section 115 (g) to accumulations “after February 28, 1913” — to borrow a phrase — “is to re-emphasize — though perhaps somewhat redundantly — that distributions of earnings and profits accumulated prior to the date mentioned are excluded from * * * the statute.” Vesper Co. v. Commissioner, supra, at 205. Finally it is urged that, if not dividends, the redemptions were compensation for services. Having already dealt with that alternative under 1, supra, we need discuss it no further than to say that, in our view, it was the stock, and not the cash ultimately exchanged for it, that constituted the compensation reasonably to be gathered from the facts in the present-record. George M. Gross, supra, at 773. See Jack Benny, 25 T. C. 197. 3. “Collapsible” Corporation. Eespondent by amended answer, and not in the deficiency notice, attempts to tax the proceeds of both redemption and sales as ordinary income by invoking the provisions of section 117 (m). Since this provision[6] first became effective in 1950, he makes no similar effort as to the gains realized in 1949. See Pat O'Brien, 25 T. C. 376. Because the posture of the pleadings places upon respondent the burden of proving all necessary operative facts, Sheldon Tauber, 24 T. C. 179, we shall content ourselves by considering only one aspect of the application of section 117 (m). This is not a case where respondent advances a mere additional ground for sustaining a deficiency already determined. Cf., e. g., Raoul H. Fleischmann, 40 B. T. A. 672; see also Sol M. Flock, 8 T. C. 945. The item of income in controversy was not even mentioned in the original deficiency notice; and its inclusion by amended answer leads logically, and in fact, to respondent’s, application for increased deficiencies. One of the several requirements of section 117 (m) is that at least 70 per cent of the gain realized shall be “attributable to the property so * * * constructed.” Petitioner retorts that there is no proof of the origin of the gain and suggests that it may have been due to overappraisal, inclusion or increase in value of nonconstruction items, or activities prior or subsequent to construction such as rezoning or full occupancy. Respondent’s only reply is “that the increase in value of the land was attributable to the construction of the apartment projects in the case of each corporation and that without such construction and off-site improvements the value of the land would never have increased to the extent that it did.” (Emphasis added.) Of these statements there is no evidence in the record. Ordinarily, it would have been incumbent upon petitioner to disprove the fact. But we cannot assume it here. There seems an implicit concession by respondent that some of the gain was not attributable to the penalized source. We have no way of knowing how much was. On this record, and without considering petitioner’s numerous other contentions relating to the general issue, we can only say that respondent has not, in our view, performed the requisite task of showing here that section 117 (m) is applicable. See Thomas Wilson, 25 T. C. 1058. 4- If the statute of limitations issue has not been abandoned, which it seems to have been, it must be decided against petitioner on authority of Ticker Publishing Co., 46 B. T. A. 399, 415; Liebes v. Commissioner, (C. A. 9) 63 F. 2d 870. Once a deficiency notice, which is proper and timely, has been issued, respondent is authorized to apply for an increased deficiency “at or before the hearing or a rehearing,” section 272 (e), regardless of whether in the meantime the statute may have run against the determination of an original deficiency. Decision will be entered under Rule 60. The figures are not exactly equal but nearly so. Internal Revenue Code of 11)39. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (g) Redemption op Stock.— (1) In oenickai.. — If n corporation cancels or redeems its stock (whether or not such stock was Issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. George M. Gross, 23 T. C. 756; see also Michael P. Erburu, 23 T. C. 820. Internal Revenue Code of 1939. SEC. 22. GROSS INCOME. (e) Distributions by Corporations. — Distributions by corporations shall be taxable to the shareholders as provided In section 115. Note 2, supra. Internal Revenue Code of 1939 SEC. 117. CAPITAL GAINS AND LOSSES. (m) Collapsible Corporations.— (1) Treatment op gain to shareholders. — Gain from the sale or exchange (whether In liquidation or otherwise) of stock of a collapsible corporation, to the extent that It would be considered (but for the provisions of this subsection) as gain from the sale or exchange of a capital asset held for more than 6 months, shall, except as provided in paragraph (3), be considered as gain from the sale or exchange of property which Is not a capital asset. (2) Definitions.— (A) For the purposes of this subsection, the term “collapsible corporation” means a corporation formed or availed of principally for the manufacture, construction, or production of property, for the purchase of property which (In the hands of the corporation) is property described in subsection (a) (1) (A), or for the holding of stock in a corporation so formed or availed of, with a view to— (i) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, prior to the realization by the corporation manufacturing, constructing, producing, or purchasing the property of a substantial part of the net income to be derived from such property, and (ii) the realization by such shareholders of gain attributable to such property. (B) For the purposes-of subparagraph (A), a corporation shall be deemed to have manufactured, constructed, produced, or purchased property, if— (i) it engaged in the manufacture, construction, or production of such property to any extent, (11) It holds property haring a basis determined, in whole or in part, by reference to the cost of such property in the hands of a person who manufactured, constructed, produced, or purchased the property, or (iii) It holds property having a basis determined, in whole or in part, by reference to the cost of property manufactured, constructed, produced, or purchased by the corporation. (3) Limitations op application op subsection. — In the case of gain realized by a shareholder upon his stock in a collapsible corporation— (A) this subsection shall not apply unless, at any time after the commencement of the manufacture, construction, or production of the property, or, at the time of the purchase of the property described in subsection (a) (1) (A) or at any time thereafter, such shareholder (i) owned (or was considered as owning) more than 10 per centum in value of the outstanding stock of the corporation, or (ii) owned stock which was considered as owned at such time by another shareholder who then owned (or was considered as owning) more than 10 per centum in value of the outstanding stock of the corporation; (B) this subsection shall not apply to the gain recognized during a taxable year unless more than 70 per centum of such gain is attributable to the property so manufactured, constructed, produced, or purchased ; and (C) this subsection shall not apply to gain realized after the expiration of three years following the completion of such manufacture, construction, production, or purchase. For purposes of subparagraph (A), the ownership of stock shall be determined in accordance with the rules prescribed by paragraphs (1), (2), (3), (5), and (6) of section 503 (a), except that, in addition to the persons prescribed by paragraph (2). of that section, the family of an individual shall include the spouses of that individual’s brothers and sisters (whether by the whole or half blood) and the spouses of that individual’s lineal descendants.