## NATIONAL INVESTORS CORPORATION
### v. HOEY.

District Court, S. D. New York.

June 9, 1943.

Wright, Gordon, Zachry, Parlin & Cahill, of New York City (John P. Ohl and Clifford L. Porter, both of New York City, of counsel), for plaintiff.

Edward J. Ennis, Sp. Asst. to the Atty. Gen. (William L. Lynch and Joseph C. Kenney, Asst. U. S. Attys., both of New York City, of counsel), for defendant.

COXE, District Judge.

This is an action to recover an alleged overpayment of corporate income and excess profits taxes for the year 1935, amounting to $38,689.03, with interest from March 31, 1937. The case was tried by the court without a jury on stipulated facts.

The plaintiff, in its return for 1935, computed its taxable net income at $52.80, after deducting from its gross income the sum of $229,855.21 for losses claimed to have been realized in an exchange of securities made within the year. On the basis of the return, the plaintiff paid an initial tax of $7.26.

The commissioner, on a subsequent audit, refused to allow the claimed deduction of $229,855.21, which resulted in the assessment of an additional tax of $36,413.20. This additional tax was paid by the plaintiff on March 31, 1937, with accrued interest of $2,275.83, making a total additional payment of $38,689.03. Claim for refund was then filed and rejected, after which the present action was commenced.

The plaintiff is a New York corporation organized in 1927. Its business is that of an investment trust. In 1934, it held among its assets large blocks of stocks and purchase warrants of three closely affiliated corporations known as Second National Investors Corporation, Third National Investors Corporation and Fourth National Investors Corporation.

For some time prior to December 17, 1934, the plaintiff had under consideration a plan to unite the plaintiff and the three affiliated corporations into a single investment trust with a single corporate structure. The "fundamental objective" of the plan was to improve the marketability of the shares of the different corporations on the New York Stock Exchange.

As a first step looking towards the union, the plaintiff deemed it advisable to transfer its inter-company holdings in the three affiliated corporations to another corporation known as National Investors Fund, Inc. This latter corporation had been organized by the plaintiff in Delaware on January 29, 1931, to conserve the corporate name for possible future purposes. It had not previously issued any of its stock, had never conducted any business, and had no assets or liabilities. It was purely a dor-

mant corporation controlled entirely by the plaintiff.

On December 17, 1934, the plaintiff transferred to National Investors Fund, Inc., the securities of the three affiliated corporations which it then held, and received in exchange ten shares of the capital stock of National Investors Fund, Inc., being the entire share capital of the corporation. The adjusted cost to the plaintiff of the securities so transferred was $4,660,233.40.

The plan for uniting the plaintiff with the three affiliated corporations into a single investment trust was submitted to the stockholders of the different corporations on or about December 20, 1934, and after extended consideration it was rejected and later abandoned. The original purpose of the transfer of the securities thus having failed, the plaintiff decided on December 16, 1935, to commence the liquidation of National Investors Fund, Inc.

In the meantime, and while the plan was under consideration, National Investors Fund, Inc., received cash dividends on the securities held by it, amounting in the aggregate to $19,285.85. These monies were in turn distributed as dividends to the plaintiff, less the sum of $10, or a total of $19,275.85. In addition, National Investors Fund, Inc., declared on December 7, 1935, a 100% stock dividend on its outstanding stock, under which the plaintiff received an additional ten shares of the capital stock of the corporation.

The plan for the liquidation of National Investors Fund, Inc., contemplated a 10% partial liquidation in December, 1935, and the completion of the liquidation in January, 1936. A contract was accordingly entered into on December 20, 1935, between the plaintiff and National Investors Fund, Inc., by which National Investors Fund, Inc., agreed to purchase at private sale one-tenth of its outstanding shares in exchange for one-tenth of its assets. On the following day, namely, December 21, 1935, the plaintiff surrendered to National Investors Fund, Inc., the certificates representing two shares of the capital stock of the corporation for retirement and cancellation, and received in exchange therefor one-tenth of the securities held by National Investors Fund, Inc. All of the necessary steps to effect this partial liquidation of National Investors Fund, Inc., as required by Delaware law, were taken, and on December 30, 1935, a certificate of reduction of capital was filed in Delaware, by which two shares of the stock were retired, and the capital of the corporation was reduced to $1,800.

The plan of liquidation was completed on January 16, 1936, on surrender of the certificates for the remaining eighteen shares, and the plaintiff then received back the balance of the securities.

The adjusted cost basis of the two shares surrendered for retirement and cancellation on December 21, 1935, was $466,023.34, and exceeded the aggregate market value of the securities received by at least $229,855.21. It is admitted by the plaintiff that its "purpose in providing that the plan of liquidation be partially effected * * * was to realize a portion of its loss in 1935 sufficient in amount to offset taxable income realized by the plaintiff in 1935 from other sources, principally capital gains from security sales". The National Investors Fund, Inc., filed a separate tax return for the year 1935, in which it showed no taxable income.

The only question in the case is whether the plaintiff is entitled to the deduction of $229,855.21 for losses realized in 1935. This deduction is claimed under Section 115, subdivs. (c) and (i) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, pages 703, 704, on the partial liquidation of National Investors Fund, Inc., in 1935. The principal contention of the government is that the entire transaction, commencing with the transfer of the securities to National Investors Fund, Inc., on December 17, 1934, was sham, and should be disregarded under Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, and Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319. It is also insisted that National Investors Fund, Inc., was a mere agency of the plaintiff, and should not be recognized as a separate entity.

The Gregory, Higgins and Griffiths cases have no application to the facts of the present case. In those cases the corporate form was mere camouflage to conceal the real purpose of tax avoidance. The determining characteristic of all three cases was the intent of the taxpayer running through the entire transaction. Lea v. Commissioner, 2 Cir., 96 F.2d 55; Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, certiorari denied, 296 U.S. 641, 56 S.Ct. 174, 80 L.Ed. 456; Paul, Studies in Federal Taxation (Third Series) pages 121-134. In the

present case the plaintiff transferred the securities to National Investors Fund, Inc., as the first step in a plan to unite the plaintiff and the three affiliated corporations into a single investment trust with a single corporate structure. This was a real transaction undertaken in good faith for a perfectly legitimate business purpose, and there is no suggestion that the plaintiff had at the time any intent to avoid the payment of taxes. The unification plan failed only because after extended consideration it was rejected by the stockholders of the different corporations. I find nothing in these facts to warrant a holding that there was anything sham or unreal in the transfer of the securities to National Investors Fund, Inc. Much the same question as now presented was raised in Lea v. Commissioner, supra, where it was urged by the government that an assignment of patents to a corporation which remained in existence only three days fell within the Gregory decision. The court in rejecting this contention said at page 57 of 96 F.2d of the opinion: "If an intention to dissolve within three days existed when the patents were assigned to Patent Corporation, there would be a basis for the argument that the Gregory case was applicable. However, it is uncontradicted that there was no such intent, but the corporation was meant to operate as a patent holding corporation in connection with the gyroscope business which the buyer was purchasing from the Research Company".

◼ When the unification plan failed, the plaintiff decided to commence the liquidation of National Investors Fund, Inc. The plan of liquidation contemplated a 10% partial liquidation in 1935, and the completion of the liquidation in 1936. It is not disputed that all of the necessary procedural steps to effect this partial liquidation were taken in 1935. The case is, therefore, brought squarely within the language of Section 115, subdivs. (c) and (i) of the Revenue Act of 1934, providing that "amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock". Kelly v. Commissioner, 2 Cir., 97 F.2d 915, 916; Malone v. Commissioner, 5 Cir., 128 F.2d 967.

But the government insists that there was only a single plan of liquidation, which was not completed until 1936, and that no loss could be taken in 1935. I think it is a sufficient answer to this contention that the statute allowed the loss on partial liquidation to be taken in 1935 when it was sustained. The complete liquidation of the corporation in 1936 was governed by Section 110 of the Revenue Act of 1935, 26 U.S.C.A.Int.Rev.Acts, page 802, which, by its terms, applied only "in the case of taxable years beginning after December 31, 1935".

It is also urged by the government that the partial liquidation in 1935 should not be recognized because the admitted purpose of the plaintiff was "to realize a portion of its loss in 1935 sufficient in amount to offset taxable income realized by the plaintiff in 1935 from other sources". The argument is that after the unification plan failed the securities should have been returned to the plaintiff in exchange for the return of the outstanding stock. All that this means is that the plaintiff had a choice of two alternative methods and selected the one which resulted in tax saving. This was clearly permissible. Commissioner v. Gilmore's Estate, 3 Cir., 130 F.2d 791; Chisholm v. Commissioner, supra.

◼ The contention of the government that National Investors Fund, Inc., was a mere agency of the plaintiff is not supported by the facts. The corporation had a business purpose and actually functioned as a business enterprise for over a year; its separate existence during this period was carefully maintained and protected by the plaintiff. Under these circumstances, there is no basis for holding that the corporation should not be recognized as a separate entity. Moline Properties Inc. v. Commissioner, decided by the Supreme Court on June 1, 1943, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499.

There may be a decree for the plaintiff for $38,689.03, with interest from March 31, 1937.