STAN W. AND JOLANTA T. ZAJACZKOWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zajaczkowski v. Commissioner
Docket No. 30289-88
United States Tax Court
T.C. Memo 1990-503; 1990 Tax Ct. Memo LEXIS 556; 60 T.C.M. (CCH) 842; T.C.M. (RIA) 90503; September 24, 1990, Filed *556 Decision will be entered for the respondent. Stan W. Zajaczkowski, pro se. Susan T. Mosley, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 13,689.33 in petitioners' Federal income tax for 1985 and additions to tax under section 6651(a)(1) *557 of $ 688.51; section 6653(a)(1) of $ 775.77; section 6653(a)(2) of 50 percent of the interest payable under section 6601 with respect to the underpayment; and section 6661(a) of $ 3,422.33. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year in issue. The issues for decision are whether certain income is taxable to petitioners or to a corporation and whether petitioners are liable for the additions to tax. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Petitioners Stan W. Zajaczkowski (petitioner) and Jolanta T. Zajaczkowski were residents of Maryland at the time the petition in this case was filed. In 1982, petitioner contracted with Analysas Corporation (Analysas) to provide computer services for the World Bank as a computer programmer. In 1983, petitioner formed Megatron Systems Corporation (Megatron). On February 2, 1983, Megatron qualified to conduct business in Maryland. Petitioner was the vice president and treasurer of Megatron. The resident agent of Megatron was Roy K. Shyamal (Shyamal). *558 Megatron did not obtain a corporate employer identification number (EIN). Petitioner opened a bank account for Megatron at Metropolitan Federal Savings and Loan (Metropolitan). Petitioner had sole signature authority on that account. He provided Metropolitan with his home address as the mailing address for Megatron. On March 30, 1983, petitioner entered into a contract on behalf of Megatron with Analysas. Under that contract, petitioner performed services as a data base administrator for the World Bank. The services petitioner performed under that contract were the same as those he performed under his 1982 contract with Analysas. The contract provided, in relevant part, that: * * * ANALYSAS agrees to employ Stan Zajaczkowski of Megatron as a subcontractor in a manner consistent with ANALYSAS' contract with the World Bank for the period Jan. 24 - Mar. 31, 1983. Megatron agrees to perform this work under contract for the fixed price of $ 22/hour. * * * The contract was amended five times. The final amendment extended the contract through June 30, 1985. In 1985, Analysas paid Megatron $ 36,398.44; during that time, Megatron had no income from *559 any other source. Megatron's charter and its authority to do business in Maryland were forfeited on December 19, 1984, for failure to file the necessary corporate personal property report. Petitioner received a Form 1099-MISC, Statement for Recipients of Miscellaneous Income, from Analysas for 1985. That statement reported that petitioner had received income of $ 36,398.44 from Analysas in 1985. That statement was sent to petitioner's home address and included petitioner's social security number for identification. Petitioners executed Form 4868 and received an extension of time to August 15, 1986, to file their 1985 Federal income tax return. Petitioners mailed that return on August 18, 1986. Respondent determined that petitioners had unreported nonemployee compensation of $ 36,398 in 1985. Respondent also determined that petitioners had unreported interest income of $ 113 in 1985; petitioners have conceded that amount. OPINION Petitioners bear the burden of proof with respect to the remaining issues in this case. Rule 142(a), Tax Court Rules of Practice and Procedure.
Respondent argues that the $ 36,398.44 paid by Analysas to Megatron is taxable to petitioner as *560 an individual, because Megatron was not a separate taxable entity in 1985 or, alternatively, that that amount is taxable to petitioner under the assignment of income doctrine. Petitioner argues that (1) the notice of deficiency is insufficient to provide him with fair notice of respondent's position in this case; (2) Megatron was a separate entity and was formed for substantial business purposes other than tax avoidance; and (3) the assignment of income doctrine does not apply. Petitioner argues that the notice of deficiency did not provide him with notice of respondent's legal theories in this case and, accordingly, petitioner did not have fair notice of those theories. Respondent, however, is not required to assert legal theories in the notice of deficiency. See Mayerson v. Commissioner, 47 T.C. 340, 348-349 (1966); Estate of Finder v. Commissioner, 37 T.C. 411, 423 (1961). In Shaw Construction Co. v. Commissioner, 35 T.C. 1102 (1961), affd. 323 F.2d 316 (9th Cir. 1963), we set forth the analysis to be performed in *561 determining whether a corporation would be recognized for Federal income tax purposes, as follows: As we recognized in the Aldon case [Aldon Homes, Inc. v. Commissioner, 33 T.C. 582 (1959)], taxpayers have the right to mold their business transactions in such a manner as to minimize the incidence of taxation, Gregory v. Helvering, 293 U.S. 465 (1935), United States v. Cumberland Pub. Serv. Co., 338 U.S. 451 (1950), but, on the other hand, the Government is not required to acquiesce in the form chosen by taxpayers for doing business, and if the form is unreal or a sham, the fiction may be disregarded for purposes of the tax statutes. Higgins v. Smith, 308 U.S. 473 (1940). The incidence of taxation depends on the substance of the transaction, Commissioner v. Court Holding Co., 324 U.S. 331 (1945), and, as pointed out by Judge Learned Hand in National Investors Corporation v. Hoey, 144 F.2d 466, 468 (C.A. 2, 1944) (reversing 52 F.Supp. 556): to be a separate *562 jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term "corporation" will be interpreted to mean a corporation which does some "business" in the ordinary meaning; and that escaping taxation is not "business" in the ordinary meaning. [35 T.C. at 1113-1114.] Further, to be recognized for Federal tax purposes, a corporation "must be a viable business entity, that is, it must have been formed for a substantial business purpose or actually engage in substantive business activity." Aldon Homes, Inc. v. Commissioner, 33 T.C. 582, 597 (1959); Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). Cf. Commissioner v. Bollinger, 485 U.S. 340 (1988). Respondent argues that Megatron was not a separate taxable entity in 1985. Petitioner argues that Megatron was a separate legal entity and was formed with a substantial business purpose other than tax avoidance. Petitioner cites Cole v. Randall Park Holding Co., 201 Md. 616, 95 A.2d 273 (1953); United Merchants and Manufacturers, Inc. v. David & Dash, Inc., 439 F.Supp. 1078 (D.Md. 1977); *563 S.A.S. Personnel Consultants, Inc. v. Pat-Pan, Inc., 286 Md. 335, 407 A.2d 1139 (1979), for the proposition that Megatron was "doing business" in Maryland during 1985 and that that is evidence that Megatron had a separate legal existence. Petitioner cites Keller v. Commissioner, 77 T.C. 1014 (1981), affd. 723 F.2d 58 (10th Cir. 1983), for the proposition that Megatron actively carried on the business of providing computer consulting services. Further, petitioner contends that he formed Megatron for the purpose of shielding himself from personal liability arising from his consulting practice and that that is a substantial business purpose. Finally, petitioner argues that the terms of the March 30, 1983, contract between Megatron and Analysas provided Megatron with business purposes. Specifically, petitioner contends that: Substantial business purposes are evident in the terms of this agreement. The non-competition provisions contained in paragraphs (5) and (12), which once applied to petitioner, now applied only to Megatron. * * * Petitioner's arguments are without merit. In 1982, petitioner began performing *564 services under contract with Analysas. In 1983, petitioner formed Megatron. On March 30, 1983, petitioner executed a contract on behalf of Megatron that provided that payments from Analysas for petitioner's services would thereafter be made to Megatron. The services performed by petitioner for Analysas did not change during that time. Petitioner testified as follows with regard to Megatron's incorporation and shareholders: Q And who were the other shareholders? A I believe Roy Shmal [Shyamal] was one of them. It's difficult for me to say because I haven't been able to obtain any of the stock transfer books. Q Were you an officer or on the board of directors in 1985? A I was not on the board of directors. Q Were you an officer? A I guess so, yes. Q In what capacity? A I was a vice president. Q You were a vice president. Were you also the treasurer? A I guess I did consider myself to be the treasurer. Q Who was the president and the chief executive officer in 1985 of Megatron? A I believe it was Mr. Shmal [Shyamal]. * * * Q Were there other employees of Megatron? A Yes, there were. Q Who were they? A I believe Mr. Shmal [Shyamal] was one *565 of them and my wife also did some work. There is no credible evidence that Megatron had any officers other than petitioner. Shyamal was a friend of petitioner and the resident agent of Megatron. Further, there is no credible evidence that Megatron had any employees. Petitioner's testimony reveals that he was unclear about his own status with Megatron, as follows: Q Is it your position that you were an employee of Megatron in 1985? A It's my position that I provided my services through that entity. Q Were you an employee or were you not? A I may have been an employee. I may have been an independent contractor. I'm not quite sure. Petitioner testified that he did not receive either a Form W-2 or Form 1099 from Megatron for 1985. Further, petitioner was unable to produce an EIN for Megatron. Petitioner argues that the United States Department of the Treasury and the Bank of Baltimore bear substantial responsibility for that failure. Petitioner contends that "Bank of Baltimore officials have assured petitioner, that these [EIN] records are 'probably' in one of the thousands of boxes kept in a 'warehouse in Baltimore'. Unfortunately, *566 the boxes are neither labelled nor dated." Petitioner provided no corroborative evidence to support that assertion. We conclude that petitioner's contractual arrangement with Analysis was illusory and that Megatron did not conduct any business activity. Petitioner's reliance on Keller v. Commissioner, supra, is misplaced. In Keller v. Commissioner, 77 T.C. at 1032, we held that, where a personal service corporation had a recognized separate existence and where there was a clearly defined and observed employment arrangement between the entity and the individual, respondent could not allocate the entire income of the corporation to the taxpayer-shareholder. We concluded therein that the corporation actually conducted business. In that case, the taxpayer had an employment contract with the corporation, the taxpayer was paid a regular salary, and other indicia of business activity were present. Those indicia are not present in the instant case. Considering all the evidence in this case, we conclude that petitioner has not satisfied his burden of proving *567 that Megatron was a separate legal entity in 1985. We need not extensively address respondent's alternate argument that the assignment of income doctrine is applicable to the present case. To avoid that doctrine, petitioner must prove that he was an employee of Megatron. We have concluded that Megatron was not a separate legal entity for tax purposes. Therefore, petitioner could not have been an employee of Megatron. Johnson v. Commissioner, 78 T.C. 882, 891 (1982), affd. without published opinion 734 F.2d 20 (9th Cir. 1984). Our conclusion also resolves petitioner's argument that he was a common-law employee of Megatron. We have considered and reject petitioner's contention that the amounts paid by Analysas to Megatron were not paid to petitioner but rather were paid by Megatron as expenses for the production of income. Petitioner has presented no evidence of expenses incurred by Megatron during 1985. Finally, we must decide whether petitioner is liable for additions to tax under sections 6651(a)(1), 6653(a)(1), and 6653(a)(2). Petitioners executed a Form 4868 and received an extension of time to August 15, 1986, to file their 1985 Federal *568 income tax return. Petitioners mailed their return on August 18, 1986. Petitioner contends that the delay was due to marital difficulties and that he "had a problem matching the check with the return." Neither of petitioners' explanations constitutes reasonable cause for their late filing and the section 6651(a)(1) addition to tax is sustained. Petitioners have not provided any evidence, and they have not persuaded us, that their failure to report interest income and their failure to report petitioner's earnings from Analysas were not due to negligence. They are liable for the additions to tax under sections 6653(a)(1) and 6653(a)(2). See Emmons v. Commissioner, 92 T.C. 342, 350 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Section 6661, for the year in issue, provides an addition to tax of 25 percent of the underpayment of tax attributable to a substantial understatement of income tax. Sec. 6661(a). Section 6661(b)(2)(B)(i) provides for a reduction of the amount of the understatement by that portion of the understatement that is attributable to the tax *569 treatment of any item if there is or was substantial authority for such treatment. Section 6661(b)(2)(B)(ii) provides for a reduction of the amount of the understatement where the relevant facts affecting the tax treatment of an item are adequately disclosed in the return or in a statement attached to the return. In Antonides v. Commissioner, 91 T.C. 686 (1988), affd. 893 F.2d 656 (4th Cir. 1990), we set forth the following analysis to be applied in determining whether a taxpayer has substantial authority for a position: In evaluating whether a taxpayer's position regarding treatment of a particular item is supported by substantial authority, the weight of authorities in support of the taxpayer's position must be substantial in relation to the weight of authorities supporting contrary positions. Sec. 1.6661-3(b)(1), Income Tax Regs. * * * * * * The weight of the authorities for the tax treatment of an item is determined by the same analysis that a court would be expected to follow in evaluating the treatment of the item. *570 Thus, an authority is of little relevance if it is materially distinguishable on its facts from the facts of the case at issue. Sec. 1.6661-3(b)(3), Income Tax Regs. [91 T.C. at 702-703.] Petitioner argues that substantial authority exists for his position. He asserts that the arguments and cases cited in his brief illustrate substantial authority. The cases upon which petitioner relies are materially distinguishable. When all of the facts of the present case and the authorities are considered, petitioner's treatment of the income from Analysas was without substantial authority. The requirement of adequate disclosure can be satisfied by providing on the return sufficient information to enable respondent to identify the potential controversy involved. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Petitioner received a Form 1099 reporting that he, not Megatron, had income from Analysas. Petitioners, as a minimum, should have disclosed their position on their tax return if they wished to avoid liability under section 6661. Decision will be entered for the respondent.